IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DAVID PEER** and **MARK MOLINE,** individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**RICK'S CUSTOM FENCING AND DECKING, INC.,** a domestic business corporation**,** and **RICHARD LEE STANLEY**, an individual,<br><br>Defendants. | Case No.: 3:20-cv-01155-AR<br><br>ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR ATTORNEY FEES AND COSTS |

**ARMISTEAD, Magistrate Judge**

Plaintiffs David Peer and Mark Moline, on behalf of themselves and similarly situated employees, filed this employment action against their former employer, Rick's Custom Fencing and Decking, Inc. (RCFD), and its president, Richard Lee Stanley. They contend that defendants underpaid class members in violation of ORS 652.610, ORS 652.120, ORS 653.025, ORS 652.140; the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207; and Oregon common law. Sec. Am. Compl. ¶¶ 51-113 (Class and Collective Claims), ECF No. 69.[1] In accordance with the FLSA, Plaintiffs moved to conditionally certify their collective action claims, which the court granted on September 15, 2021. Order, ECF No. 61.

---

[1] Plaintiff Peer also asserted that defendants discriminated and retaliated against him in violation of ORS 659A.355, 29 U.S.C. § 215(a)(3), ORS 659A.199, 42 U.S.C. § 12111 *et seq.*, ORS 659A.112, ORS 659A.109, ORS 659A.118, ORS 659A.040, ORS 659A.043, ORS 659A.046, 29 U.S.C. § 2601 *et seq.*, ORS 659A.183, ORS 653.641, ORS 659A.030, and Oregon common law. Sec. Am. Compl. ¶¶ 114-194 (Unlawful Employment Practice Claims). On June 30, 2022, the parties reported to the court that they had resolved the Unlawful Employment Practice Claims by separate agreement on March 28, 2022. The proposed Class Settlement Agreement does not address Peer's individual claims.

-1- ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR ATTORNEY FEES AND EXPENSES

Following extensive arms-length negotiations with an experienced mediator, the parties agreed to settle the Class and Collective Claims, and Plaintiffs moved for preliminary approval of the proposed settlement agreement on June 9, 2022. Unopposed Motion to Certify Class and Preliminary Approval of Settlement, ECF No. 158. Under the proposed settlement, in exchange for the release of the Class and Collective Claims, defendant RCFD agreed to pay a Maximum Settlement Liability Amount of $990,000 to a common fund to be managed by Simpluris, Inc., the parties' appointed Settlement Administrator. Stipulation and Settlement Agreement of Class Action, ECF No. 159-1. The maximum settlement amount includes direct payments to class members, as well as settlement administration expenses, class representative service awards, applicable employer payroll tax payments, and Class Counsel's reasonable attorney fees and litigation costs.

The court preliminarily approved the proposed settlement on July 12, 2022, finding that it appeared to be a "sufficiently fair, reasonable, non-collusive, and adequate settlement of the Class Claims." Order, ECF No. 166. The court also conditionally certified the proposed class and approved the form, content, and method of delivering notice to the class. On November 15, 2022, the court held a fairness hearing to consider final approval of the Settlement Agreement, to confirm the certification of the class for settlement purposes, and to consider Class Counsel's application for attorney fees and costs. No objections were filed or stated at the hearing.

This matter is now before the court on Plaintiffs' Motion for Final Approval of Class Action Settlement (ECF No. 171) and Motion for Attorney Fees and Costs (ECF No. 167). Both motions are unopposed. Having considered all papers filed and proceedings in this matter, the

court GRANTS[2] Plaintiffs' motions and enters this Order, which constitutes a final adjudication on the merits of all claims of the settlement class.

## FINDINGS

**A.     Settlement Terms**

The definitions and provisions memorialized in the Stipulation and Settlement Agreement of Class Action (ECF No. 159-1) are incorporated in this Order.

1. <u>Definitions</u>: For ease of reference, the court recounts the following relevant definitions:

    a. "Class Counsel" means the attorneys at Meyer Stephenson LLC and Albies & Stark LLC.

    b. "Class Members" means all of Defendant's[3] non-exempt employees, whether current or former, with a commission agreement or bonus structure, including the Crew Mangers, Crew Leaders, Crew Helpers, and Crew Apprentices, who performed services in Oregon during any time between July 17, 2014, and April 1, 2022.

    c. "Class Representatives" means the Plaintiffs David Peer and Mark Moline.

    d. "Collective Action" means all of Defendants' non-exempt employees, whether current or former, with a commission agreement or bonus structure, including the Crew Managers, Crew Leaders, Crew Helpers, and Crew Apprentices, who performed services in Oregon during any time between July 17, 2014, and April 1, 2022.

---

[2]     The parties have consented to magistrate judge jurisdiction under 28 U.S.C. § 636(c)(1). ECF No. 165; *Koby v. ARS Nat. Servs., Inc.* 846 F.3d 1071, 1077 (2017) ("Congress has authorized magistrate judges to enter judgment in a class action so long as the named parties to the action have consented . . . .").

[3]     Within the Settlement Agreement, "Defendant" refers to RCFD.

-3-     ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR ATTORNEY FEES AND EXPENSES

  e. "Effective Date" means the later of (i) the court's final approval of the Settlement Agreement, if no objections have been filed; (ii) the time of appeal has expired if an objection has been filed; or (iii) the final resolution of any appeal that has been filed.

  f. "Settlement Administrator" means a neutral third party to administer the Settlement and retained for this purpose by the parties. The parties have selected Simpluris, Inc. to serve as the Settlement Administrator.

  g. "Releasees" means Defendant and all of Defendant's present and former owners, parents, subsidiaries affiliates, and joint ventures, and all of their owners, shareholders, officers, directors, employees, agents, servants, registered representatives, attorneys, insurers, successors and assigns, and any other persons acting by through, under or in concert with any of them.

2. General Terms: Plaintiffs have agreed to release the underlying Class and Collective Claims in exchange for Defendant's agreement to pay a Maximum Settlement Liability Amount of $990,000 (Settlement Amount). The Settlement Amount includes (1) administration costs not to exceed $20,000; (2) service awards of $17,500 for the Class Representatives; (3) applicable employer payroll tax payments estimated to cost $68,272.43; (4) attorney fees of $297,000 (30 percent of the Settlement Amount) for Class Counsel; and (5) reimbursement of $45,672.36 to Class Counsel for reasonable litigation costs. The remainder of the Settlement Amount, after deduction of these payments, constitutes the "Net Settlement Amount" and will be used to pay the Class Members.

3. <u>Settlement Awards:</u> Each Settlement Class Member will receive a Settlement Award, which will be distributed from the Net Settlement Amount in accordance with the procedures set forth in section 4.3.1 of the Settlement Agreement. Any Unclaimed Settlement Awards will be redistributed as set forth in section 4.3.5. In the event that redistribution of the Unclaimed Settlement Awards would result in distributions of less than $20 per Settlement Class Member, those funds will instead be distributed to Legal Aid Services of Oregon. No settlement funds will revert to defendants.

4. <u>Scope of Release:</u> As set forth in section 4.2 of the Settlement Agreement, "all Settlement Class Members fully release Releasees from any and all wage and hour claims . . . whether known or unknown, contingent or accrued, that were alleged or that reasonably could have been alleged based on the facts alleged in the Action, including those under any Oregon statute or regulation concerning unpaid overtime, claims for missed meal or rest breaks, claims for liquidated damages, claims for unlawful deductions from wages, claims for conversion of wages, claims for record-keeping violations, late payment and overtime penalties, including claims under ORS Chapters 652 and 653 and OAR Chapter 839 Division 1 and Division 20, as well as any other Oregon wage and hour statute or regulation." Additionally, "Settlement Class Members who negotiate, execute or deposit their Settlement Awards will have opted into the Collective Action pursuant to 29 U.S.C. § 216(b) and will release any claims for unpaid overtime or minimum wages that they may have against the Releasees under the FLSA through the Effective Date."

5. <u>Protected Rights:</u> The Release of Claims does not apply to any claims that Plaintiffs or Settlement Class Members may have for workers' compensation benefits, unemployment benefits, vested retirement benefits, or any other similar non-waivable rights. The Release

of Claims also does not apply to Plaintiff David Peer's individual claims, as expressly excluded in Subsection 3.1 of the Settlement Agreement.

**B.     Notice to Class Members**

The procedures for giving notice to the Class Members, as set forth in the Settlement Agreement and ordered in the court's preliminary approval order (ECF No. 166), have been satisfied by the Settlement Administrator, Simpluris. Decl. of Lindsay Kline, ECF No. 172.

1. On June 29, 2022, Simpluris received the court-approved Notice of Wage and Hour Class Action and Settlement (Class Notice). The Class Notice advised Class Members of their rights to request exclusion from the Settlement, to object to the Settlement, to dispute workweeks, to do nothing, and the implications of each such action. The Class Notice advised Class Members of applicable deadlines and other events, including the Final Approval Hearing.

2. On July 15, 2022, Defense Counsel provided Simpluris with a mailing list (Class List) containing Class Members' contact information. The Class List contained data for four hundred and fifty (450) Class Members. Class Notice was mailed to all 450 Class Members on August 10, 2022. No Class Notices were returned to Simpluris.

3. Simpluris received one Request for Exclusion from a Class Member. No Class Members objected to the Settlement.

**C.     Fairness, Reasonableness, and Adequacy of the Proposed Class Settlement**

Under Rule 23(e), the court's primary role is to determine whether the proposed class settlement is fundamentally fair, reasonable, and adequate. In making this determination, the court must balance a number of factors: "the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status

throughout the trial; the amount offered in settlement; the stage of the proceedings; and the experience and views of counsel." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). As set forth below, these factors favor the proposed settlement.

1. <u>Strength of Case</u>: Class Counsel extensively researched and vigorously litigated the claims in this action, including by engaging in extensive discovery practice and diligently working to understand Defendant's complicated payment structure and wage data. Plaintiff Peer initially filed this action on July 17, 2020, amending it to add class claims on December 14, 2020. On November 3, 2021, Peer filed a Second Amended Complaint (SAC), alleging that Defendant deprived employees of wages; failed to properly pay overtime by miscalculating the regular of pay; took unlawful deductions; and failed to pay all wage due on final paychecks for former employees in violation of the FLSA and state wage and hour laws. Ultimately, Class Counsel achieved significant success in negotiating a favorable settlement. That the proposed settlement was reached after hard-fought, lengthy negotiations facilitated by experienced mediators weighs in favor of approval. Given these efforts, the strength of Plaintiffs' case favors approval of the proposed settlement.

2. <u>Risk and Expense of Further Litigation:</u> While maintaining that their claims have merit, Plaintiffs acknowledge that litigating this action to trial carries risk, including the likelihood that Defendant will contest class certification and challenge the bases for the underlying liability, particularly with respect to overtime claims. Risk also exists as to the amount and nature of damages available to the class because, to obtain the maximum potential benefit for all claims alleged, Plaintiffs would need to be awarded multiple statutory damages for each independent wage payment and receive statutory penalties for

the different types of violations that occurred. Moreover, the complexity of the claims and calculations in this matter will likely generate jury confusion. These risks and the expenses of continued litigation demonstrate that the proposed settlement is a fair, reasonable, and adequate result. *Barbosa v. Cargill Meats Sols. Corp.*, 297 F.R.D. 431, 447 (E.D. Cal. 2013) ("Although a larger award was theoretically possible, 'the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes.'") (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998))).

3. <u>Settlement Amount:</u> "[T]he critical component of any settlement is the amount of relief obtained by the class." *Lane v. Brown*, 166 F. Supp. 3d 1180, 1189 (D. Or. 2016) (citing *Bayat v. Bank of the West*, Case No. C-13-2376 EMC, 2015 WL 1744342, at *4 (N. D. Cal. Apr. 15, 2015)). Here, Class Counsel negotiated a Total Settlement Amount of $990,000, with a Net Settlement Amount of approximately $609,827.36, exclusive of applicable employer payroll taxes, to be distributed to the 450 Class Members. Kline Decl. ¶ 15. Plaintiffs estimate that the total amount of actual loss for class members was $697,624, which means the percentage of recovery under the Settlement Agreement was approximately 87.4% of their actual loss. Decl. of Talia Guerriero ¶ 20, ECF No. 169. Given the risk and expense of further litigation, this result is fair, adequate, and reasonable.

4. <u>Distributions:</u> The planned distributions to Class Members have a reasonable and rational basis. Distributions will be carried out according to a formula and are directly related to the amount of out-of-pocket loss that each individual experienced and whether the individual was entitled to penalties.

5. <u>Experience of Counsel:</u> Class Counsel consist of lawyers at two different firms, all of whom have considerable experience litigating individual and class action employment matters. Accordingly, the court gives great weight to counsels' recommendation to settle in lieu of pursuing further litigation.

6. <u>Reaction of Class Members:</u> Finally, the reaction of Class members to the Settlement has been favorable. Of the 450 Class members, none have objected to the Settlement. The Settlement Administrator received one (1) request for exclusion. Kline Decl. ¶¶ 11-12.

**D.     Certification of Settlement Class**

Where the parties reach a settlement agreement before the proposed class has been certified, the court "must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). In connection with certification for settlement purposes, the court finds:

1. <u>Rule 23(a):</u> The Class meets the requirements of Fed. R. Civ. P. 23(a) because (i) membership of the Class is ascertainable and the Class is so numerous that joinder of all members is impracticable; (ii) there are questions of law and fact common to the Class; (iii) the claims of the Class Representatives are typical of the claims of the Class Members; (iv) Class Representatives and Class Counsel fairly and adequately represent the interests of the Class.

2. <u>Rule 23(b)(3):</u> The Class satisfies the requirements of 23(b)(3) because (i) common questions of law and fact predominate over questions affecting only individual Class Members and (ii) class settlement is a superior method of adjudicating this action.

////

////

E.  **Administration Costs, Service Awards, and Employer Payroll Taxes**

1. <u>Administration Costs</u>: The $20,000 that Plaintiffs request be approved as payment to the Settlement Administrator is fair and reasonable. The requested amount is agreed-upon by the parties and supported by the Declaration of Lindsay Kline, ECF No. 172.

2. <u>Service Awards</u>: The requested Service Awards of $10,000 for Class Representative Peer and $7,500 for Class Representative Moline are reasonable and fair. The Class Representatives assumed responsibilities on behalf of and for the benefit of the Class, even where this commitment meant postponing their own relief for a year. In light of these efforts, the requested rewards are appropriate.

3. <u>Employer Payroll Taxes</u>: As set forth in section 4.3.7 of the Settlement Agreement, the Settlement Administrator will calculate payroll deductions, if necessary, for state, federal, and local taxes from each Settlement Award to a Class Member. Plaintiffs estimate that applicable employer payroll taxes total $68,272.43. Kline Decl. ¶ 15.

F.  **Attorney Fees and Litigation Costs**

The court has an independent duty to ensure that requested attorney fee awards are reasonable, even in the absence of objections. Fed. R. Civ. P. 23(h). Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method to assess the reasonableness of the fee request. *In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). Under the percentage-of-recovery method, the court evaluates reasonableness through several factors: "(1) the extent to which class counsel achieved exceptional results for the class; (2) whether the case was risky for class counsel; (3) whether counsel's performance generate benefits beyond the cash settlement fund; (4) the market rate for the particular field of law; (5) the burdens class

counsel experienced while litigating the case; and (6) whether the case was handled on a contingency basis." *In re. Optical Disk Drive Prods Antitrust Litig.*, 959 F.3d 922, 929-30 (9th Cir. 2020) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002)).

The court may also perform a lodestar "cross-check" to confirm that the percentage-of-recovery amount is reasonable. First, the court calculates the lodestar figure by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate of the attorneys performing that work. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The court then performs the cross-check by comparing the proposed percentage-based fee award with the lodestar calculation. *Barbosa v. Cargill Meats Sols. Corp.*, 297 F.R.D. 431, 451 (E.D. Cal. 2013) (noting that a lodestar cross-check can be performed with "a less exhaustive cataloguing and review of counsel's hours").

District courts must ensure that their fee awards are "supported by findings and take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. According, the court makes the following findings with respect to Class Counsels' fee and cost requests:

1. <u>Attorney Fee Request:</u> Class Counsel seek $297,000 in attorney fees—representing 30% of the $990,000 Maximum Settlement Amount. This percentage is appropriate under Ninth Circuit precedent and in line with the market rate for similar work. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) (noting that the typical range of acceptable attorney fees in the Ninth Circuit is 20 percent to 33.3 percent of the total settlement value); *see e.g.*, *Barbosa*, 297 F.R.D. at 450-51 (awarding 33% of common fund in wage and hour action).

2. The Settlement was an exceptional result that achieved valuable and substantial consideration for the class. As discussed above, the Settlement accounts for nearly all of

the actual economic harm suffered by the Class Members. This is a favorable result, particularly because the majority of the Class Members' claims are too low in value to make individualized litigation an economical option.

3. There were significant risks involved in this litigation, including the possibly that the class might not be certified and that Plaintiffs might lose on the merits given the complexity of many of the legal issues and lack of clarity in relevant federal regulations. Moreover, Defendants used a complicated commission calculation that was burdensome to explain to the Court and would likely generate confusion for a jury. On balance, these risks support Plaintiff's attorney fee request.

4. Class Counsel litigated this action on a contingency fee basis and, as such, invested considerable time, effort, and money with no guarantee of recovery. In accepting this case, Class Counsel also had to forego other potentially lucrative opportunities.

5. <u>Lodestar Cross-Check:</u> Class Counsel attest that, in total, they have expended approximately 739 hours on this action. This amount is likely an underestimate because it does not include additional time expended in seeking final approval of the Settlement, responding to Class Members inquires, and working with Simpluris to administer the Settlement.

6. Whitney Stark of Albies & Stark expended 205.7 hours on this action at a requested hourly rate of $450. Decl. of Whitney Stark ¶¶ 2-3, ECF No. 168. This hourly rate is reasonable, as it is supported by seventeen years of experience litigating individual and complex class action employment matters and falls within the 75th and 95th percentile for Portland attorneys with similar years of practice representing individual in civil litigation. *See* Guerriero Decl. ¶ 8, Ex. B (2017 Oregon State Bar Economic Survey).

7. The lodestar calculation for Albies & Stark totals $92,565.

8. Attorneys and staff at Meyer Stephenson expended 640.1 overall hours on this matter. *Id.* ¶ 4, Ex. A (chart reflecting hours and lodestar for work performed). Because a portion of that time was spent litigating Plaintiff Peer's individual discrimination claims, 20 percent of the hours spent by Robert Meyer, Talia Guerriero, and Stephanie Lopez from the start of this action until March 28, 2022—the date on which those claims were resolved—have been allocated solely to Plaintiff Peer's individual claims. The court finds this allocation reasonable.

9. Following that adjustment, Meyer Stephenson expended 533.78 hours litigating the Class and Collective Claims in this action. Those hours are apportioned as follows:

   a. Talia Guerriero, a partner with eleven years of experience litigating employment actions, worked 343.16 hours at a requested hourly rate of $400;

   b. Robert Meyer, a partner with sixteen years of experience representing employees in state and federal court, worked 48.86 hours at a requested hourly rate of $450;

   c. Christina Stephenson, a partner with thirteen years of experience litigating employment matters, worked 59.5 hours at a requested hourly rate of $425;

   d. Michael Owens, an of counsel with over twelve years of experience, worked 12.7 hours at a requested hourly rate of $375;

   e. Sarah Osborn, a law clerk, worked 9.8 hours at a requested rate of $150; and

   f. Stephanie Lopez, a paralegal, worked 59.76 hours at a requested hourly rate of $100.

10. Meyer Stephenson's requested hourly rates are reasonable, within the ranges approved in the 2017 OSB Economic Survey (as adjusted for inflation), and supported by the experience of its attorneys and staff.

11. The lodestar calculation for Meyer Stephenson totals $196,805.

12. Taken together, Class Counsel's lodestar figure is $289,370—approximately 97% of the proposed 30 percent fee award of $297,000. Thus, the lodestar cross-check supports the reasonableness of Class Counsel's requested fees.

13. <u>Litigation Costs:</u> Class Counsel seek reimbursement of $45,672.36 in litigation costs, with $19,066.46 apportioned to Albies & Stark and $26,605.90 apportioned to Meyer Stephenson. The declarations of Class Counsel detail these costs incurred, which include compensation for Plaintiffs' expert, mediation fees, costs associated with taking and defending six depositions, and administrative expenses. Stark Decl. ¶ 7; Guerriero Decl. ¶ 19, Ex. C. The court has reviewed these costs and finds them appropriate.

**ORDER**

Based on the foregoing findings, the court issues the following ORDERS:

1. Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement (ECF No. 171) is GRANTED.

    a. The Settlement is fair, adequate, and reasonable to all potential Class Members, when balanced against the probable outcome of further litigation. At the time the Settlement was negotiated, counsel for the parties were reasonably able to evaluate their respective positions. The Settlement will avoid substantial additional costs to all parties, as well as the delay and risks that would be presented by further prosecution of the action.

b. The plan for giving notice, in form, method, and content, as well as the execution of giving such notice by the parties and the Settlement Administrator, has fully complied with the requirements of Rule 23, due process, and this court's order granting preliminary approval. In response to the Class Notice, only one Class Member requested exclusion from the Settlement, no Class Members objected to the Settlement terms, and no Class Member disputed the approximate Settlement Award noted in the Class Notice.

c. For settlement purposes only, the court certifies the proposed settlement Class in accordance with Fed. R. Civ. P. 23(a) and 23(b)(3). The court approves the parties' agreed-upon Class definition, Class Counsel, Class Representatives, and Settlement Administrator.

d. The court grants final approval of the Stipulated Settlement Agreement of Class Action (ECF No. 159-1), including the Release of Claims and distribution of service awards and class member awards as stated in that agreement.

e. The court approves Legal Aid Services of Oregon as the cy pres beneficiary.

f. The court approves (i) payment of $20,000 in administrative expenses to Simpluris, the appointed Settlement Administrator; (ii) service awards of $10,000 to David Peer and $7,500 to Mark Moline; and (iii) payment of applicable Employer Payroll Taxes as set forth in the Settlement Agreement.

g. Each member of the Settlement Class, except for the one individual who opted out of the Settlement, fully releases and discharges Defendants as provided in section 4.2 of the Settlement Agreement.

////

-15-  ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR ATTORNEY FEES AND EXPENSES

2.   Plaintiffs' Unopposed Motion for Attorney Fees and Costs (ECF No. 167) is GRANTED.

   a.  Class Counsel, as identified above, will receive as their fee $297,000—30 percent of the Maximum Settlement Liability Amount and will receive reimbursement of $45,672.36 in reasonable litigation costs. These amounts are to be paid to Class Counsel in accordance with the Settlement Agreement.

3.   This action is DISMISSED with prejudice. The court retains continuing jurisdiction solely for purposes of enforcing the Settlement Agreement, addressing Settlement administration matters, and addressing such post-judgment matters as may be appropriate.

   IT IS SO ORDERED.


November 16, 2022

_____
JEFFREY ARMISTEAD
United States Magistrate Judge